JUDGE RAKOFF

13 CV 4534

EDWARDS WILDMAN PALMER, LLP
David Weild III (DW 9023)
Rory J. Radding (RR 4042)
H. Straat Tenney (HT 1224)
750 Lexington Avenue
New York, NY 10022
Telephone: (212) 308-4411
Facsimile: (212) 308-4844



*Attorneys for Plaintiffs Victorinox AG; Victorinox Swiss Army, Inc.;
and Wenger NA, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

VICTORINOX AG, VICTORINOX SWISS   :
ARMY, INC., and WENGER NA, INC.,   :
                                :
              Plaintiff,       :    Civil Action No.:
                                  :
     -against-           :
                                  :
THE B & F SYSTEM, INC., JOHN D. MEYER,  :
ABC CORPORATIONS 1-10, and JOHN DOES  :   **COMPLAINT AND**
1-10,                               :    **JURY DEMAND**
                                  :
            Defendant.      :
                                  :

-------------------------------------- X

Plaintiffs Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc.

(collectively, "Plaintiffs"), by and through their undersigned attorneys, Edwards Wildman

Palmer, LLP, for their complaint against defendants The B & F System, Inc., John D. Meyer,

ABC Corporations 1-10, and John Does 1-10 (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.     The red-handled multifunction pocket knife, created in 1897 in the small village

of Ibach, Switzerland by Plaintiffs, has become famous throughout the world and is one of the

most widely recognized and respected consumer product brands of all time, synonymous with

product precision, quality, and versatility (the "Swiss Army Knife"). The trade dress for red-

handled multifunction pocket knives has become famous in the United States and is registered at the United States Patent and Trademark Office, Registration No. 3,546,920, as shown below (the "Red Handle Mark").



2.    Defendants make, or have made, a look-alike product which first came to Victorinox's attention on March 25, 2013, when a U.S. Customs Officer detained a shipment of red-handled knives, branded as ROYAL CREST, and queried whether the suspect counterfeit products were sanctioned (the "Infringing Knives"). Victorinox confirmed that the Infringing Knives were unauthorized and requested that they be destroyed.

3.    Plaintiffs bring this action to protect the reputation and integrity of their famous Red Handle Mark, and the Swiss Army brand, to ensure that the public is not confused, deceived, or misled into buying Defendants' inferior products thinking that the Infringing Knives originate with Plaintiffs, and to enjoin Defendants from further acts of infringement, unfair competition, and dilution.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act , 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5.    Upon information and belief, Defendant is subject to personal jurisdiction of this Court because it, *inter alia*, transacts business within this District, contracts to supply goods within this District, drop-ships goods into this District, engages in a persistent course of conduct

in New York and its environs, and expects, or should expect, its acts to have legal consequences within New York and this District.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400, in that Defendants are subject to personal jurisdiction in this District, and the events and omissions giving rise to Plaintiffs' claims occurred, and continue to occur, in this District as well as elsewhere in the United States.

## PARTIES

7.     Plaintiff Victorinox AG ("Victorinox") is a joint stock company organized and existing under the laws of Switzerland with a principal place of business at Schmiedgasse 57 CH-6438, Ibach-Schwyz, Switzerland.  Victorinox has an office and a flagship retail store in New York, New York, and conducts substantial business in this District.  Victorinox is the owner of all trademark rights in the Red Handle Mark for multifunction pocket knives in the U.S. Victorinox, and its wholly owned subsidiary, Wenger S.A., manufacture Swiss Army Knives only in Switzerland and export to the United States finished knives bearing the Red Handle Mark for distribution by their exclusive distributors and subsidiaries, Victorinox Swiss Army, Inc. and Wenger, NA, Inc., respectively.

8.     Plaintiff Victorinox Swiss Army, Inc. ("VSAI") is a wholly owned subsidiary of Victorinox AG and exists under the laws of Delaware with a principal place of business at 7 Victoria Drive, Monroe, Connecticut 06468.  VSAI distributes in the United States multifunction pocket knives bearing the Red Handle Mark made by Victorinox in Switzerland.

9.     Plaintiff Wenger NA, Inc. ("Wenger NA"), a subsidiary of VSAI, is a corporation organized and existing under the laws of Delaware, with a principal place of business at 15

Corporate Drive, Orangeburg, New York 10962. Wenger NA distributes in the United States multifunction pocket knives bearing the Red Handle Mark made by Wenger S.A. in Switzerland.

10.     Upon information and belief, defendant B & F System, Inc. ("B & F") is a corporation organized and existing under the laws of the State of Texas with a principal place of business of 3920 S. Walton Walker Boulevard, Dallas, Texas 75236. Upon further information and belief, Defendant manufactures in China, and imports, promotes, distributes, drop-ships, offers for sale, and/or sells Infringing Knives in the United States.

11.     Upon information and belief, defendant John D. Meyer, an individual and President of defendant B & F, and resident in the State of Texas, has personally participated in and has willfully and knowingly directed the wrongful acts of B & F, complained herein, and such wrongful acts have been and are engaged in for the benefit of B & F and for his own individual gain and benefit.

12.     ABC Corporations 1-10 and John Does 1-10 are corporations and other legal entities and/or individuals whose identities are not presently known to Plaintiffs, and who are also engaged in manufacturing, importing, promoting, distributing, drop-shipping, selling, and/or offering for sale Infringing Knives procured from B & F. The Complaint herein will be amended to include the name or names of these individuals as and when such information becomes available.

## SWISS ARMY KNIVES AND THE RED HANDLE MARK

A.    The Growth of Plaintiffs' Red Handle Mark

13.     In 1897, Karl Elsener began producing a pocketknife containing multiple tools, called the "Offiziersmesser," or the "Officer's Knife." The original tool included a single knife blade, two screwdrivers, a can opener, an awl, and a corkscrew. Mr. Elsener clad this knife with

AM 20731073

a red handle to distinguish it from his black-colored Soldier's Knife. A modern image of the original red-handled Officer's Knife is shown below.



14.     Mr. Elsener's company, Victorinox, first sold the red-handled multifunction pocket knives in the United States in 1936. It was not until the end of World War II, however, that the popularity of the red-handled knives grew rapidly in this country. American soldiers, returning home from the Second World War, brought with them from Europe "the little red knife," which they called the "Swiss Army Knife" because "Offiziersmesser" was difficult to pronounce.

15.     Continuing a business tradition of more than 125 years, Swiss Army Knives today are manufactured only by Plaintiffs and only in Switzerland. Below is a photograph of the iconic Swiss Army Knife with the Red Handle Mark as it has evolved.



AM20731073

16.     The red-handled knives are distributed in the United States exclusively by VSAI and Wenger NA to, *inter alia*, sporting goods stores, hardware stores, specialty knife shops, and department stores, as well as through online retailers or sales platforms, such as Amazon.com and eBay.com. Victorinox and Wenger also sell Swiss Army Knives bearing the Red Handle Mark through their own retail stores, including Victorinox's flagship store in Manhattan, and online at the URLs http://www.swissarmy.com and http://www.wengerna.com.

17.     Plaintiffs' use of the Red Handle Mark on multifunctional pocket knives has been substantially exclusive in the United States for over seventy years. In the United States, Plaintiffs have sold over ten million (10,000,000) multifunction knives bearing the Red Handle Mark with a retail value that surpasses one billion dollars ($1,000,000,000).

18.     Today, although Plaintiffs provide knives with handles of various colors, the symbol of the company and its best-selling single item are the multi-function knives bearing the Red Handle Mark, which without words, designate Plaintiffs as the source.

**B.     Plaintiffs' Quality Control and Promotional Efforts Increase Brand Recognition**

19.     Plaintiffs manufacture every Swiss Army Knife. Rigorous quality control is exercised over the manufacture and servicing of each multifunction tool. While much of the knife assembly process has become automated, the grinding and polishing of the blades is performed by hand and the quality control functions are performed under the expert eyes of Plaintiffs' professional workforce. Indeed, Plaintiffs retain an old-fashioned view of business, with highly skilled personnel, approximately ten percent (10%) of whom are employed checking each knife before it leaves the factory.

20.     As part of their commitment to quality, Plaintiffs have always offered a repair service for the Swiss Army Knives, replacing any part which breaks or proves defective. A very

AM 20731073

small percentage of knives are returned for repair within the first five years. However, customers become attached to their "little red knives" and frequently will keep and use them for many years. When springs are weakening with age, or a blade has been sharpened so many times that it almost wears away, customers send the knife back for repair. In many cases it would be cheaper for Plaintiffs to replace the knife with a new model, but a well-used Swiss Army Knife has enormous sentimental attachment. The owner will not part with a trusted friend and reliable companion and insists on repair.

21.     Plaintiffs have undertaken very successful efforts to build goodwill and brand recognition of their Red Handle Mark. Over the past 70 years, Plaintiffs have invested millions of dollars in ongoing efforts strategically to market, advertise, and promote the Red Handle Mark in the United States and elsewhere. Plaintiffs use a combination of traditional promotional efforts, direct advertising, word-of-mouth, and unsolicited advertising as vehicles to promote their product.

22.     One display advertisement, which is distributed to retail stores in many countries, is a motorized Swiss Army Knife bearing the Red Handle Mark featuring implements that open and close in succession (the "Red Handle Mark Display"). A photograph of the Red Handle Mark Display as it appears at a retailer on Lexington Avenue in Manhattan is shown below.

7



From 1967 to 2004, over 21,500 Red Handle Mark Displays have been placed with Plaintiffs' retail dealers worldwide. Plaintiffs have also installed smaller Red Handle Mark Displays at retail locations throughout the U.S. As a result of the widespread use of the Red Handle Mark Displays, consumers recognize that Plaintiffs are the source of multifunction pocket knives bearing the Red Handle Mark.

23.    The Red Handle Mark is so closely associated with Plaintiffs and indicative of Plaintiffs' products, history, and goodwill, that the headquarters building in Ibach-Schwyz and Plaintiffs' delivery trucks are decorated with large murals featuring the Red Handle Mark

24.    Plaintiffs have created entire marketing campaigns which focus solely on the Red Handle Mark. Most recently, Victorinox launched a "Stories" promotion where customers share personal experiences with their Swiss Army Knives. Specifically, the Red Handle Mark is substituted in place of the mark "Swiss Army." A screenshot from the online version of this marketing campaign is shown below.

8



25.     These quality control and marketing efforts have paid dividends measured through unsolicited press accounts lauding the iconic red-handled Swiss Army Knives. References to the Red Handle Mark have appeared in newspapers with national circulation, such as the *New York Times*, the *Chicago Tribune*, and the *Los Angeles Times*. A picture of a Swiss Army Knife is used as a symbol for technology in a column featured in the *Wall Street Journal*.

26.     Plaintiffs have received numerous accolades and awards recognizing the Swiss Army Knife as a model for versatility and excellent design. The iconic Swiss Army Knife was selected by the New York Museum of Modern Art and the State Museum for Applied Art in Munich for their respective collections of excellence in design. Many U.S. Presidents since Lyndon B. Johnson have given Swiss Army Knives as gifts for visitors to the White House, and for years, NASA issued the red-handled knives to Space Shuttle astronauts as part of their personal equipment.

27.     The knives have also been featured in Hollywood movies and on Broadway. A red handle Swiss Army Knife stars in the Hollywood movie "Get Smart" with Steve Carell, where the main character is seen using a red-handled Swiss Army Knife fitted with a crossbow, flamethrower, and blowgun. The red-handled Swiss Army Knife also played a prominent role in the Broadway musical "Catch Me If You Can," where a dancer is dressed as a Swiss Army Knife bearing the Red Handle Mark because this is one of the tools the main character uses. "Catch Me If You Can" was a Broadway hit for over 170 performances, and has since embarked on a national tour in cities across the United States. A photograph of a character dressed in the Red

9

Handle Mark, as well as a genuine Swiss Army Knife, which is held by the lead character, as it has appeared on Broadway, is shown below.



**BROADWAY MUSICAL COMEDY "CATCH ME IF YOU CAN"**

C.     The United States Trademark Registration for the Red Handle Mark

28.     In 2005, Plaintiff Victorinox AG applied to register its Red Handle Mark with the United States Patent and Trademark Office ("USPTO"). On December 16, 2008, the USPTO awarded to Victorinox AG U.S. Trademark Registration No. 3,546,920 on the Principal Register, acknowledging that the Red Handle Mark had acquired distinctiveness based on its many years of continuous use in commerce, media attention featuring the Red Handle Mark, proven consumer association of the Red Handle Mark with Plaintiffs, and the very considerable sales of Swiss Army Knives bearing the Red Handle Mark over many decades. A copy of the certificate of registration of the Red Handle Mark and printouts showing the current status of Registration No. 3,546,920 are attached as Exhibit A.

AM 20731073

29.     The Certificate of Registration for the Red Handle Mark identifies the mark as the color red "as applied to the outer portion of the pocket knives."

30.     The federal registration for the Red Handle Mark is valid, subsisting, unrevoked, and uncancelled, and, at all times relevant, in full force and effect.

**D.     Plaintiffs' Protection of their Red Handle Mark**

31.     As the popularity of Swiss Army Knives has grown, so have the number of incidents of unauthorized copying. Plaintiffs have implemented a worldwide program to deal with counterfeits of their products and infringements of their trademarks, including the Red Handle Mark.

32.     Plaintiffs go to great lengths to police the marketplace and enforce the Red Handle Mark in order to protect the public from deception and confusion, as well as to protect the core of the company, the employees, the customers, and all who manufacture, distribute, promote, and sell genuine Swiss Army Knives. When they become aware of an infringer, Plaintiffs routinely move to protect the Red Handle Mark by confronting the particular problem with what Plaintiffs believe is an appropriate remedy, including cease and desist letters, litigation, seizures, and raids. Plaintiffs have openly publicized and discussed their efforts in a book devoted to the history of the Swiss Army Knives.

**DEFENDANT'S CONDUCT**

33.     Plaintiffs first learned about Defendants on March 25, 2013, when United States Customs and Border Protection ("U.S. Customs") Officer David J. Mayo contacted Plaintiffs concerning a shipment of over 2,300 "Royal Crest 2 pc. Army Knife Gift Sets" that had been detained at the port of Dallas/Ft. Worth (the "Infringing Knives"). Officer Mayo suspected that

11

the knives were counterfeit Swiss Army Knives and took the following photograph showing one such counterfeit knife.



The seized shipment was destined for Defendants' headquarters and showroom at 3920 S. Walton Walker Boulevard, Dallas TX, 75236. The remaining photographs taken of the spurious knives by Officer Mayo are attached as Exhibit B.

34.    On or about April 22, 2013, Plaintiffs received a letter from U.S. Customs confirming that it seized two thousand three hundred and seventy six (2,376) "Royal Crest Multitool" knives because the "articles are 'counterfeit' versions of trademark merchandise, attempted to be imported in violation of the provisions of title 19 United States Code, section 1526(e)." A copy of the letter from U.S. Customs is attached as Exhibit C.

35.    The Infringing Knives are slavish copies of Plaintiffs' genuine Swiss Army Knives. Most notably, the Infringing Knives feature an identical or closely similar shade of red that is associated with Swiss Army Knives, registered as U.S. Trademark Registration No. 3,546,920, and recorded with U.S. Customs under Customs Record No. TMK-0900268. The seized knives also copy the general dimensions, contours, and tool placement identified with genuine Swiss Army Knives, including the placement of a white toothpick and metal tweezers in

the knife body and the provision of an attachment ring. Moreover, the Infringing Knives feature a cross and shield device placed in substantially the same position as the Plaintiffs' well-known Victorinox cross and shield device and the Wenger emblem. Upon information and belief, the knives seized by U.S. Customs were manufactured in China, whereas Plaintiffs knives are all manufactured at Plaintiffs' facilities in Switzerland in accordance with Plaintiffs' strict quality control. A comparison of the Victorinox's Swiss Army Knife and Defendants' spurious copy is shown below.

**Plaintiffs' Swiss Army Knife**                    **Defendants' Infringing Knife**



36.     With respect to their quality and performance, Defendants' Infringing Knives are very different from the iconic Swiss Army Knife. On the one hand, Plaintiffs' red-handled knives have been manufactured in Switzerland for over a century to high quality standards such that they have come to symbolize durability, reliability, and versatility. Defendants' Infringing

AM 20731073

Knives, on the other hand, are manufactured in China, and, are of lesser quality than Swiss Army Knives. Specifically, Defendants' Infringing Knives have loose joints, the saw blades is not sharp, the knife blades dull easily, the tools that are difficult to open, and often do not close properly.

37.     The Infringing Knives seized by U.S. Customs are often marketed in combination sets that are packaged in a metal container containing at least one Infringing Knife and a key chain. The key chain features a cross and shield device that closely resembles the national emblem of Switzerland, further suggesting that the Infringing Knives originate in Switzerland and with Plaintiffs.

38.     After an investigation, Plaintiffs confirmed that the counterfeit knives seized by U.S. Customs are manufactured, imported, promoted, distributed, drop-shipped, offered for sale, and/or sold as ROYAL CREST multifunction tools by Defendants. Upon information and belief, the over 2,300 knives seized by U.S. Customs are marketed as the "Camper," a knife model name used by Plaintiffs in the U.S. for over 50 years.

39.     Upon information and belief, Defendants import, promote, distribute, drop-ship, offer for sale and/or sell the Infringing Knives in this District and throughout the United States, by way of their website at URL http://www.bnfusa.com, their showroom at 3920 S. Walton Walker, Dallas, Texas, and through a network of third parties (the "Third Party Retailers") who purchase such products from Defendants at wholesale and who then sell the Infringing Knives to customers in this District and throughout the United States. Upon information and belief, Defendants induce the Third Party Retailers' infringing efforts by providing promotional materials for the Infringing Knives, and by drop-shipping Infringing Knives to the Third Party Retailers or directly to customers of the Third Party Retailers in this District and throughout the

14

United States. Printouts from Defendants' website showing the Infringing Knives are attached as Exhibit D.

40.     In March 2013, Plaintiffs first learned that Defendants' Infringing Knives were being sold in the United States on the same websites that carry Swiss Army Knives, including, *inter alia*, eBay.com and Amazon.com. Defendants' Infringing Knives are also available for purchase on Sears.com. Copies of printouts from websites of third parties that sell Defendants' products at retail, depicting examples of the Infringing Knives are attached hereto as Exhibit E.

41.     On May 2, 2013, shortly after U.S. Customs seized the Infringing Knives as counterfeit, and without first contacting Plaintiffs to discuss the matter, Defendants petitioned to cancel the United States Registration No. 3,546, 920 for the Red Handle Mark. That proceeding is currently pending before the Trademark Trial and Appeal Board.

42.     By manufacturing, importing, promoting, distributing, drop-shipping, offering to sell, and selling red-handled knives that are identical or highly similar to those of the Plaintiffs and which copy the Red Handle Mark, Defendants are, upon information and belief, seeking to take unfair advantage of the enormous goodwill and brand recognition in the Red Handle Mark that Plaintiffs have developed over the past 70 years. Defendants' use of the color red on their Infringing Knives threatens to mislead the public, and has impaired Plaintiffs' ability to control their reputation, and tarnish the quality of the genuine Swiss Army Knives bearing the Red Handle Mark.

43.     Despite actual and constructive knowledge of Plaintiffs' Red Handle Mark, upon information and belief, Defendants continue to manufacture, promote, distribute, drop-ship, offer for sale, and sell the Infringing Knives in this District and throughout the United States.

AM 20731073

44.     Upon information and belief, Defendants, as a result of the foregoing acts, intentionally, willfully, and knowingly adopted red handles that are virtually identical to the Red Handle Mark in, *inter alia*, an effort to trade on Plaintiffs' goodwill and the cachet associated with Swiss Army Knives bearing the Red Handle Mark.

45.     Plaintiffs have not at any time authorized Defendants to manufacture, import, promote, distribute, drop-ship, offer for sale, or sell products bearing the Red Handle Mark or marks that resemble the Red Handle Mark.

46.     Defendants' use of red handles that are virtually identical to Plaintiffs' Red Handle Mark is likely to mislead and to cause confusion, mistake, and deception of the relevant purchasing public as to the origin of the Infringing Knives, and is likely to deceive purchasers into believing that the Infringing Knives originate from, is associated with, or is otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs, Plaintiffs' reputation and goodwill and for the unjust enrichment of Defendants.

47.     Defendants' use of such red handles on or in connection with the importation, manufacture, promotion, distribution, drop-shipment, offer for sale, and sale of the Infringing Knives is causing immediate and continuing irreparable harm to Plaintiffs and will continue to do so unless restrained by this Court.

## COUNT I

### Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)

48.     The allegations set forth in paragraphs 1 through 47 hereof are adopted and incorporated by reference as if fully set forth herein.

49.     Plaintiffs' federally registered Red Handle Mark, and the goodwill of the business associated with it in the United States and throughout the world, is of great exclusive and incalculable value.

16

50.     The Red Handle Mark is highly distinctive and arbitrary and has become associated in the public mind with multifunction pocket knives of the highest quality that originate exclusively with Plaintiffs.

51.     Without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' prior rights in the Red Handle Mark, Defendants manufactured, imported, promoted, distributed, drop-shipped, offered for sale, and sold in commerce the Infringing Knives in direct competition with Plaintiffs' knives bearing the Red Handle Mark.

52.     Defendants' manufactured, imported, promoted, distributed, drop-shipped, offered for sale, and sold in commerce multifunction pocket knives bearing a spurious red-colored mark which is identical to, or substantially indistinguishable from, Plaintiffs' federally registered Red Handle Mark, United States Registration No. 3,546,920, which covers multifunction pocket knives.

53.     Defendants infringing acts as alleged herein are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, or approval of Defendants' Infringing Knives by Plaintiffs, all to the damage and detriment of Plaintiffs and their reputation, goodwill, and sales.

54.     Defendants' acts constitute trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Upon information and belief, Defendants intend to continue their infringing acts, and will continue willfully to infringe the Red Handle Mark, unless restrained by this Court.

56.     Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

AM 20731073

## COUNT II

### Contributory Trademark Infringement, Unfair Competition, and Dilution
### (15 U.S.C. §§ 1114 and 1125 and under common law)

57.    The allegations set forth in paragraphs 1 through 56 hereof are adopted and
incorporated by reference as if fully set forth herein.

58.    Upon information and belief, Defendants were at all times aware, or had reason to
be aware, of the fact that the Third Party Retailers who purchase Infringing Knives for sale to
consumers have used and continue to use the Red Handle Mark in interstate commerce without
Plaintiffs' consent.

59.    Upon information and belief, Defendants intentionally induce third parties to
infringe the Red Handle Mark by manufacturing, importing, promoting, distributing, drop-
shipping, offering for sale, and selling Infringing Knives to the Third Party Retailers or to the
customers of the Third Party Retailers, which constitutes contributory trademark infringement,
unfair competition, and dilution under federal and state law.

60.    Upon information and belief, Defendants' have manufactured, imported,
promoted, distributed, drop-shipped, offered for sale, and sold Infringing Knives for the Third
Party Retailers whom they know, or have reason to know, are engaging in the subsequent sale of
Infringing Knives to consumers, which constitutes trademark infringement, unfair competition,
and dilution under federal and state law.

61.    Upon information and belief, notwithstanding its awareness, actual or
constructive, of the Third Party Retailers' use of the Red Handle Mark without Plaintiffs'
consent, Defendants have continued to manufacture, import, promote, distribute, supply, drop-
ship, and sell Infringing Knives to the Third Party Retailers and their customers, which
constitutes trademark infringement, unfair competition, and dilution under federal and state law.

AM 20731073

62. Upon information and belief, Defendants intend to continue their infringing acts, and will continue willfully to infringe the Red Handle Mark, unless restrained by this Court.

63. Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

### COUNT III
### False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a))

64. The allegations set forth in paragraphs 1 through 63 hereof are adopted and incorporated by reference as if fully set forth herein.

65. Defendants' manufacture, importation, promotion, distribution, drop-shipment, offer for sale, and sale of the Infringing Knives, together with Defendants' use of other designations and indicia to associate themselves with Plaintiffs, as well as Switzerland, is intended to, and is likely to confuse, mislead, or deceive consumers, the public, and the trade, as to the true origin, source, sponsorship, or affiliation of the Infringing Knives, and is likely, to cause such parties to believe in error that the Infringing Knives have been made, authorized, sponsored, approved, endorsed or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs

66. Defendants' acts constitute a false designation of origin, false and misleading descriptions and representations of fact, and unfair competition, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67. Plaintiffs have been damaged, and are likely to be damaged, by the false description and representations as to the source of Defendants' knives, because there is a substantial likelihood that purchasers will be confused as to the true source, sponsorship and affiliation of such products and because purchasers will believe such products or components thereof emanate from Plaintiffs instead of Defendants.

19

68.     Defendants' acts of introducing into commerce their Infringing Knives bearing a false designation and representation as to source were willful and intentional.

69.     Plaintiffs believe that they have been and are likely to be damaged by false description or representations because of the likelihood that purchasers will be confused as to the true source, sponsorship, or affiliation of said products.

70.     Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

71.     Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this Court.

72.     Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy under law.

## COUNT IV
### Federal Trademark Dilution (15 U.S.C. § 1125(c))

73.     The allegations set forth in paragraphs 1 through 72 hereof are adopted and incorporated by reference as if fully set forth herein.

74.     Plaintiffs' Red Handle Mark is distinctive and is a "famous mark" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). The Red Handle Mark was a famous mark prior to Defendants' conduct as alleged herein.

75.     Defendants' importation, manufacture, promotion, distribution, drop-shipment, offer for sale, and sale in commerce of Infringing Knives dilutes the distinctiveness and renown of the Red Handle Mark.

76.     Defendants' importation, manufacture, promotion, distribution, drop-shipment, offer for sale, and sale in commerce of Infringing Knives constitutes dilution by tarnishment by creating an association between color red used on the Infringing Knives and Plaintiffs' Swiss

AM 20731073

Army Knives bearing the Red Handle Mark that harms the reputation of Plaintiffs' famous Red Handle Mark.

77.    Upon information and belief, Defendants have been and are continuing to knowingly and willfully trade on Plaintiffs' reputation and the goodwill of the Red Handle Mark, thereby diluting and blurring the distinctiveness and renown of the Red Handle Mark, as well as tarnishing the reputation and goodwill of Plaintiffs' famous Red Handle Mark by associating it with inferior products.

78.    Upon information and belief, Defendants were aware that their use of copies and/or colorable imitations of the Red Handle Mark on the Infringing Knives is without the authorization of Plaintiffs.

79.    Plaintiffs have no adequate remedy at law. If Defendants' activities are not enjoined, Plaintiffs will suffer immediate and continuing irreparable harm and injury to their business, to their reputation, and to the goodwill and distinctiveness in the Red Handle Mark.

## COUNT V

### Trademark Infringement Under New York Common Law

80.    The allegations set forth in paragraphs 1 through 79 hereof are adopted and incorporated by reference as if fully set forth herein.

81.    Plaintiffs own all right, title, and interest in and to the Red Handle Mark, including all common law rights in such mark.

82.    The aforesaid acts of Defendants constitute trademark infringement in violation of the common law of the State of New York.

83.    Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

AM 20731073

84.     Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this Court.

85.     Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy under law.

## COUNT VI

### Unfair Competition Under New York Common Law

86.     The allegations set forth in paragraphs 1 through 85 hereof are adopted and incorporated by reference as if fully set forth herein.

87.     With knowledge of the fame and distinctiveness of Plaintiffs' federally registered Red Handle Mark, Defendants intend to and did trade on the goodwill associated with the Red Handle Mark by manufacturing, importing, promoting, distributing, drop-shipping, offering for sale, and selling knives with a red-colored handle that is identical and/or substantially similar to Plaintiffs' Red Handle Mark.

88.     Defendants' acts as alleged herein are likely to cause confusion, mistake, deception to consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship, or approval of the Infringing Knives by Plaintiffs all to the detriment and damage of Plaintiffs and the unjust enrichment of Defendants.

89.     Plaintiffs have no adequate remedy at law.  If Defendants' activities are not enjoined, Plaintiffs will suffer immediate and continuing irreparable harm and injury to their reputation and to the goodwill and distinctiveness in the Red Handle Mark.

## COUNT VII

### Trademark Dilution Under New York Law (New York General Business Law § 368-l)

90.     The allegations set forth in paragraphs 1 through 89 hereof are adopted and incorporated by reference as if fully set forth herein.

AM 20731073

91.     The aforesaid acts of Defendants have diluted, and will likely continue to dilute, the unique and distinctive quality of Plaintiffs' Marks and are likely to injure Plaintiffs' business reputation, in violation of New York General Business Law § 368-l.

92.     Defendants knew and intended their acts to dilute the Red Handle Mark and to injure Plaintiffs' business and reputation.

93.     The aforesaid acts of Defendants have caused, and will continue to cause, great and irreparable injury to Plaintiffs, and unless said acts are restrained by this Court, Plaintiffs will continue to suffer great and irreparable injury.

94.     Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy under law.  Plaintiffs are therefore entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.      Finding that: (i) Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Section 43(a) and (c) of the Lanham Act, 15 U.S.C. §§ 1125(a) and (c); (ii) Defendants have engaged in contributory trademark infringement, unfair competition, and dilution under federal law and common law of the State of New York; (iii) Defendants have engaged in trademark infringement and unfair competition under the common law of the State of New York; (iv) Defendants have violated N.Y. Gen. Bus. Law §368-l; and (v) Defendants have been unjustly enriched in violation of the common law of the State of New York.

2.      Granting an injunction permanently restraining and enjoining Defendants , their officers, agents, employees and attorneys, and all those persons or entities in active concert or participation with them, or any of them anywhere, from:

AM 20731073

(a)     manufacturing, importing, advertising, marketing, promoting, supplying, distributing, drop-shipping, selling, or offering for sale any products which bear the Red Handle Mark, or any other mark substantially or confusingly similar thereto, including, without limitation, the Infringing Knives, and engaging in any other activity constituting an infringement of any of Plaintiffs' rights in the Red Handle Mark or any other trademark owned by Plaintiffs;

(b)     passing off, inducing, or enabling others to sell or pass off any product as products produced by Plaintiffs, which are not in fact Plaintiffs' products, or not produced under the control and supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs Red Handle Mark;

(c)     engaging in any other activity constituting unfair competition with Plaintiffs, or acts and practices that deceive the public and/or the trade, including, without limitation, the use of designations and indicia associate with Plaintiffs;

(d)     engaging in any activity that will diminish the unique and distinctive quality of the Red Handle Mark and harm the reputation and goodwill in the Red Handle Mark;

(e)     otherwise competing unfairly with Plaintiffs and any manner; and

(f)     shipping, delivering, transferring, or otherwise disposing of, in any manner, products or inventory which bear Plaintiffs' Red Handle Mark or any mark confusingly similar thereto.

3.     Directing that Defendants remove any simulation, reproduction, counterfeit, copy, or colorable imitation of the Red Handle Mark, or any mark confusingly similar thereto, from any and all advertising in any medium and/or websites under their control, including, but not limited to www.bnfusa.com.

AM 20731073

4.      Directing that Defendants deliver to Plaintiffs' counsel for destruction at Defendants' costs all signs, products, packaging, promotional and advertising material, catalogs, and any other items that bear, contain, or incorporate any simulation, reproduction, counterfeit, copy, or colorable imitation of the Red Handle Mark.

5.      Directing other such relief as the Court may deem appropriate to prevent the public from receiving any erroneous impression that any product at issue in this case, that has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, drop-shipped, sold, or offered for sale by Defendants, has been authorized by Plaintiffs, or is related to or associated in any way with Plaintiffs or its products.

6.      Directing Defendants to file with the Court and serve upon Plaintiffs, within thirty (30) days after service upon Defendants of this Court's final judgment issued in this action, a statement, signed under oath, setting forth the manner and form in which Defendants have complied with the injunction herein.

7.      Directing that Defendants account to and pay over to Plaintiffs all profits realized by their wrongful acts and directing that such profits be trebled, as provided by law.

8.      Awarding Plaintiffs its actual damages in the amount to be proven at trial and punitive damages in an amount to be proven at trial.

9.      Awarding Plaintiffs its costs and attorney fees and investigatory fees and expenses to the full extent provided for by and relief under 15 U.S.C. §§ 1116-1118 and N.Y. Gen. Bus. Law § 360(l).

10.     Awarding Plaintiffs pre-judgment interest on any monetary award made part of the judgment against Defendants.

AM 20731073

11.     Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule 38(d), Plaintiffs hereby demand a jury trial on all issues so triable that are raised by this Complaint.

Dated: June 28, 2013                         EDWARDS WILDMAN PALMER LLP

By: _____

David Weild III (DW 9023)
Rory J. Radding (RR 4042)
H. Straat Tenney (HT 1224)
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, New York 10022
212.308.4411

*Attorneys for Plaintiffs Victorinox AG;*
*Victorinox Swiss Army, Inc.; and*
*Wenger NA, Inc.*

AM 20731073

# Exhibit A

Int. Cl.: 8

Prior U.S. Cls.: 23, 28 and 44

## United States Patent and Trademark Office

Reg. No. 3,546,920
Registered Dec. 16, 2008

### TRADEMARK
### PRINCIPAL REGISTER



VICTORINOX AG (SWITZERLAND AKTIENGE-
SELLSCHAFT (AG))
SCHMIEDGASSE 57
IBACH, SWITZERLAND CH-6438

FOR: MULTIFUNCTION POCKET KNIVES, IN
CLASS 8 (U.S. CLS. 23, 28 AND 44).

FIRST USE 12-31-1897; IN COMMERCE 10-30-1936.

PRIORITY CLAIMED UNDER SEC. 44(D) ON
SWITZERLAND APPLICATION NO. 01023/2005,
FILED 4-18-2005.

THE COLOR(S) RED (RAL 3003) IS/ARE
CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE COLOR RED
(RAL 3003) AS APPLIED TO THE OUTER PORTION
OF THE POCKET KNIVES. THE DOTTED OUTLINE
OF THE GOODS IS INTENDED TO SHOW THE
POSITION OF THE MARK AND IS NOT PART OF
THE MARK AS SHOWN.

SEC. 2(F).

SER. NO. 78-733,163, FILED 10-14-2005.

WILLIAM VERHOSEK, EXAMINING ATTORNEY

Trademark Electronic Search System (TESS)

 United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Fri Jun 28 03:10:46 EDT 2013*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browse Dict | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| Goods and Services | IC 008. US 023 028 044. G & S: multifunction pocket knives. FIRST USE: 18971231. FIRST USE IN COMMERCE: 19361030 |
| Mark Drawing Code | (2) DESIGN ONLY |
| Design Search Code | 29.02.01 - Red or pink (single color used for the entire goods/services) |
| Trademark Search Facility Classification Code | ART-11.01 Knives; forks; spoons; kitchen utensils (Non-electric) SHAPES-COLORS-1 Design listing or lined for a single color |
| Serial Number | 78733163 |
| Filing Date | October 14, 2005 |
| Current Basis | 1A |
| Original Filing Basis | 1B;44D |
| Published for Opposition | September 30, 2008 |
| Registration Number | 3546920 |
| Registration Date | December 16, 2008 |
| Owner | (REGISTRANT) VICTORINOX AG AKTIENGESELLSCHAFT (AG) SWITZERLAND SCHMIEDGASSE 57 IBACH SWITZERLAND CH-6438 |
| Attorney of | David Weild III |

Case 1:13-cv-04534-JSR   Document 1   Filed 06/28/13   Page 30 of 53

Trademark Electronic Search System (TESS)

| | |
|---|---|
| **Record** | |
| **Priority Date** | April 18, 2005 |
| **Description of Mark** | The color(s) RED (RAL 3003) is/are claimed as a feature of the mark. The mark consists of the color red (RAL 3003) as applied to the outer portion of the pocket knives. The dotted outline of the goods is intended to show the position of the mark and is not part of the mark as shown. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL-2(F) |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

tmsearch.uspto.gov/bin/showfield?f=doc&state=4809.5x0yzz.2.1                                   2/2

# Exhibit B



























# Exhibit C

P.O. Box 610060
Dallas/Fort Worth Airport, TX 75261

 U.S. Customs &
Border Protection

ENF-4-02-D:HFO:-DFW  DJM
CN: 2013-5501-000300-01

APR 2 2 2013

David Weild
Edwards, Angell, Palmer & Dodge
P.O. Box 130, FD Station
New York, New York 10150

Dear Mr. Weild:

This is to notify you that on April 8, 2013, Customs and Border Protection seized at Dallas/Fort
Worth, Texas, the items described below because the articles are "counterfeit" versions of
trademarked merchandise, attempted to be imported in violation of the provisions of title 19,
United States Code, section 1526(e).

| | |
|---|---|
| Description/Quantity of Merchandise: | Two Thousand Three Hundred Seventy Six (276) Royal Crest Multitool with the Counterfeit Victorinox AG Color Red "Victorinox AG" – TMK 09-00268 |
| Date of Importation: | March 20, 2013 |
| Port of Entry: | DFW Airport, Texas |
| Name/Address of Manufacturer: | Unknown |
| Name/Address of Shipper: | Yangjiang Conniex Household Co., Ltd. No. 32 7th, Yudong Road Yangdong, Yangjiang, China |
| Country of Origin of Merchandise: | China |
| Name/Address of Importer: | B & F Systems, Inc. 3920 S. Walton Walker Blvd. Dallas, Texas 75236 |

Pursuant to Customs policy, the owner of the trademark may provide written consent for the
"unconditional" importation of the articles. If you do not provide written consent within 30 days
from the date of this letter, the articles will be forfeited and disposed of in accordance with
Customs administrative procedures.

The applicable Customs regulations pertaining to the enforcement of trademarked works requires
us to receive a completed bond form and a monetary cost bond in an amount specified by the
Port Director where a trademark holder/owner requests the temporary retention of a sample piece
of seized "counterfeit" merchandise. Should you seek the opportunity to procure a sample piece,
for a specific and temporary time period, please contact this office at the below phone number to
be advised of the administrative procedures.

P.O. Box 619050
Dallas/Fort Worth Airport, TX 75261

Please address any documents or comments regarding your position in this matter, identified by the above seizure case number, to Customs and Border Protection, Attn: FP&F Office, P.O. Box 619050, Dallas/Fort Worth Airport, Texas, 75261. If you have any questions regarding this matter, please contact Paralegal Specialist DeAnna Mitchell of the Fines, Penalties and Forfeitures Office, at 972.870.7563.

Sincerely,

D. M. Nichols
Fines, Penalties & Forfeitures Officer

Exhibit D

← C ⌂ 🗋 www.bnfusa.com/Nav.lasso?NCNN=100206 ☆ ≡

**B&F System, Inc.**
3920 S. Walton Walker
Dallas TX, 75236
E-Mail: service@bnfusa.com
Website: http://www.bnfusa.com

Phone: 214-333-2111
Fax: 214-333-1511

**Maxam Wholesale**
Friday, June 28, 2013

*Product Designer & Importer -- Wholesale Only*

**Main Menu**
- Home Page
- View our Catalog
- Forms
- News!
- FAQ
- About Us
- How to Order
- Become a Dealer
- My Account/Login
- Have an Ad Code?

**Browse Our Items**
- New Items
- Opportunity Buys
- Apparel
- As Seen On TV
- BBQ
- Bedding
- Bible Covers
- Binoculars/Scopes
- Camouflage
- Catalogs
- Clocks
- Cookware
- Countertop Display
- Cutlery
- Display
- Drinkware
- Electronics
- Flashlights
- Flatware
- Games
- Golf
- Gun Accessories
- Health & Beauty
- Home/Office
- Jewelry
- Kitchen Accessories
- Knives/Multi-Tools
  - Army Navy ▶
  - Bottle Openers
  - Box Cutters
  - Clam Shell Pack
  - Collectors Set
  - Counter Top Buckets
  - Displays

# Army Navy

### Rostfrei™ Liner Lock Knife



Features non-glare honed blade, digital camo coated aluminum handle, thumbstud, and clip. Measures 4" closed, 6-13/16" open. Gift boxed.

**Suggested Retail: $25.95**

Log in to see your wholesale price.

### Royal Crest™ "Camper" 16-Function Knife



Measures 3-3/8" closed. Blades are 420 stainless steel and the red handle is durable Leymar™. Functions include: can opener, corkscrew, reamer, manicure blade, sturdy reamer, Phillips screwdriver, hook diagorger, fish scaler, wood/rope saw, scissors, cutting blade, cap lifter, slotted screwdriver, key ring, toothpick, and tweezers. Limited lifetime warranty. Gift boxed.

**Suggested Retail: $6.95**

Log in to see your wholesale price.

### Royal Crest™ 16-Function Knife



Features 420 stainless steel blades and Leymar™ camo handle. Functions include: can opener, corkscrew, reamer, manicure blade, sturdy reamer, Phillips screwdriver, hook diagorger, fish scaler, wood/rope saw, scissors, cutting blade, cap lifter, slotted screwdriver, key ring, toothpick, and tweezers. Measures 3-3/8" closed. Limited lifetime warranty. Gift boxed.

**Suggested Retail: $6.95**

Log in to see your wholesale price.

### Royal Crest™ 16-Function Slimline Knife



Features red Leymar™ handle. Functions include: can opener, sturdy reamer, slotted screwdriver, wood/rope saw, cap lifter, tweezers, corkscrew, Phillips screwdriver, hook diagorger, scissors, key ring, reamer, manicure blade, fish scaler, cutting blade, and toothpick. Measures 3-1/2" closed. Clam shell. Limited lifetime warranty. Clam shell.

**Suggested Retail: $7.95**

Log in to see your wholesale price.

### Royal Crest™ 3pc Executive Gift Set In Aluminum Case



Set includes: one 16-function knife with can opener, corkscrew, reamer, manicure, blade, sturdy reamer, Phillips screwdriver, hook diagorger, fish scaler, wood/rope saw, scissors, cutting blade, cap lifter, slotted screwdriver, key ring, toothpick, and tweezers. Knife measures 3-3/4" closed and 5-7/8" open. One 3-function knife measuring 2-3/8" closed and 3-7/8" open with blade. Small knife features honed blade, file, scissors, toothpick and tweezers. LED light, medallion and 6 extra batteries also included. Aluminum storage case measures 5-7/8" x 1-3/8" x 4-3/8". Limited lifetime warranty. Gift boxed.

**Suggested Retail: $32.95**

Log in to see your wholesale price.

### Maxam® Fixed Blade Knife



Features nylon cord-wrapped handle, full tang and nylon sheath. Measures 11-3/8" overall. Limited lifetime warranty. Gift boxed.

Terms & Conditions | Privacy Policy | © The B&F System, Inc. All rights reserved.

Exhibit E







Feedback

# sears

Departments
Fitness & Sports

ShopYourWay Exclusives ~   Deals Center   Weekly & Local Ad   Parts & Services ~   Gift Registry
Hunting   Knives & Tools

Sears Outlet | Sell on Sears | See all

sign in | register | set location

🛒 Cart

Extra 5% off

Kmart   mygofer   Customers   Kenmore   PartsDirect   LANDS'END   Sears   Sears   Sears Outlet

Sears Jewelry | Customer Service • | Sears Credit Cards • | Gift Cards | Deal of the Day

Enter keyword or item number

Search

## ROYAL CREST 16-Function Slimline Knife SKA13SLIMCL

0 Reviews   Description   Specifications

Sold by: CueGus

**$11.99**

⚡ In Stock for Shipping
enter ZIP code for pricing

⌖ Store Pickup Not Available

Add to Cart

Quantity: 1

## Description   Item # SPM7561913510   Model # SKA13SLIMCL-4444

Features
• Red Leymar Handle
• Measures 3-1/2" Closed
• Limited Lifetime Warranty16-Function Slimline Knife SKA13SLIMCL

**16-Function Slimline Knife SKA13SLIMCL** Features red Leymar handle. Functions include: can opener, sturdy reamer, slotted screwdriver, wood/rope saw, cap lifter, tweezers, corkscrew, Phillips screwdriver, hook disgorger, scissors, key ring, reamer, manicure blade, fish scaler, cutting blade, and toothpick. Measures 3-1/2" closed. Limited lifetime warranty. Clam shell.