```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
VICTORINOX AG, VICTORINOX SWISS          :
ARMY, INC., and WENGER NA, INC.,         :
                                         :
     Plaintiffs,                         :
                                         :   13 Civ. 4534 (JSR)
          -v-                            :
                                         :   MEMORANDUM ORDER
THE B & F SYSTEM, INC., JOHN D.          :
MEYER, ABC CORPORATIONS 1-10, and        :
JOHN DOES 1-10,                          :
                                         :
     Defendants.                         :
----------------------------------------x
THE B & F SYSTEM, INC.,                  :
                                         :
     Counterclaim Plaintiff,             :
                                         :
          -v-                            :
                                         :
VICTORINOX AG, VICTORINOX SWISS          :
ARMY, INC., and WENGER NA, INC.,         :
                                         :
     Counterclaim Defendants.            :
----------------------------------------x
```



JED S. RAKOFF, U.S.D.J.

Plaintiffs Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc., makers of the iconic Swiss Army Knife, brought suit against defendants The B&F System, Inc. and John D. Meyer, asserting various state and federal trademark claims. Defendant The B&F System counterclaimed for unfair competition and cancellation of U.S. Trademark Registration No. 3,546,920, which is owned by Victorinox AG. This Court granted plaintiffs' motion for summary judgment on Count I (trademark infringement and counterfeiting under 15 U.S.C. § 1114), Count III (false designation of origin and unfair competition under 15 U.S.C. § 1125(a)), and Counts V and VI (trademark

1

infringement and unfair competition under New York common law) of their complaint. Order on Summ. J. at 2, ECF No. 54. The Court denied defendants' cross-motion for summary judgment. *Id.* In granting plaintiffs' summary judgment motion, the Court found that defendants had willfully infringed plaintiffs' trademark. *See* Mem. on Summ. J. at 5, 9, ECF No. 58.

The Court now has two motions before it. The first is plaintiffs' motion for damages; attorney fees; costs; equitable relief; and dismissal of all outstanding claims, counterclaims, and affirmative defenses. The second is plaintiffs' motion to exclude evidence defendants submitted with their opposition papers to the first motion.

The Court grants plaintiffs' motion to exclude for reasons stated from the bench. *See* Transcript, August 17, 2015. Defendants submitted three Declarations with their opposition papers, the Declaration of Frank J. Colucci, ECF No. 65; the Declaration of Joseph Lessem, ECF No. 66; and the Declaration of Scott Dalrymple, ECF No. 67. All three Declarations suffer from a variety of problems, discussed in greater detail during oral argument. *Id.* For example, the Declaration of Frank J. Colucci is, by counsel's own admission, a "rehash" of issues resolved on summary judgment and accordingly here irrelevant.[1] *Id.* It also includes material of which

---

[1] The Declaration of Nicole Deyton was submitted as part of the Declaration of Frank J. Colucci as Exhibit A1 Part 5. The Court excludes this Exhibit, along with the rest of the Declaration of Frank J. Colucci. The Court also clarifies that it did not previously reach the question of the admissibility of the Declaration of Nicole Deyton when it was submitted as an Exhibit to defendants' motion for

2

Mr. Colucci lacks personal knowledge. The Declarations of Joseph Lessem and Scott Dalrymple are, among other failings, evidence from witnesses who were never disclosed pursuant to Fed. R. Civ. Prod. 26(a) and 26(e). If a party fails to disclose a witness or expert witness, "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c)(1). Defendants did not show that their failure to disclose Mr. Lessem and Mr. Dalrymple was substantially justified or harmless.

The Court next considers plaintiffs' motion for damages; attorney fees; costs; equitable relief; and dismissal of all outstanding claims, counterclaims, and affirmative defenses. The Court grants plaintiffs' request for trebled profits, $7,987,977.08 in total. Once trademark violations have been established, 15 U.S.C. § 1117(a) awards plaintiffs defendants' profits. When intentional use of a counterfeit mark has been established, 15 U.S.C. § 1117(b) directs a court to treble plaintiffs' award. In their motion, plaintiffs rely on the uncontested Declaration and supplemental Declaration of defendant John D. Meyer to calculate total sales worth $2,662,659.36 over the period of infringement, 1983 through March 3, 2014.[2] *See* P. Mem. at 8-9, ECF No. 61; Decl. of John D.

---

summary judgment, because it found the Declaration unavailing for that purpose. *See* Declaration of Nicole Deyton, ECF No. 39.

[2] Because the dates of defendant Meyer's sales figures overlap for the period of July 23, 2013 to November 26, 2013, plaintiffs prorated the sales data for the period beginning July 23, 2013 and ending March 3, 2014. Plaintiffs calculated a

3

Meyer at ¶¶ 63, 65, ECF No. 38; Decl. of Rory J. Radding Ex. 1, ECF No. 62.

When a court assess profits in the context of a trademark violation, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Defendants have not proven any costs or deductions for the period of infringement. In the absence of any cost data, the Court takes the $2,662,659.35 sales figure as the measure of defendants' profits. This trebles to $7,987,977.08.

Defendant's objections to plaintiffs' request for profits fall short. First, defendants argue that plaintiffs' recovery should be limited to three years on statute of limitations grounds. Def. Mem. in Opp. at 2-4, ECF No. 64. This is incorrect. *See W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970). Second, defendants argue that extenuating circumstances should bar the award of treble profits. Def. Mem. in Opp. at 2-3, ECF No. 64. Defendants are correct that 15 U.S.C. §1117(b) allows a court to find "extenuating circumstances" to prevent a trebling of profits, but defendants fail to identify any extenuating circumstances in this case. Third, defendants argue that the award of profits should be reduced to the statutory limit of $200,000. Def. Mem. in Opp. at 15, ECF No. 64. However, it is the *plaintiff* that may elect to receive

---

daily sales figure for this final period and then multiplied it by the number of non-overlapping days. See P. Mem. at 9 n.3, ECF No. 61; Decl. of Rory J. Radding at 3-4, ECF No. 62. The Court has discretion in assessing profits under 15 U.S.C. § 1117(a) and sees no reason not to adopt plaintiff's approach. Defendants did not object to plaintiffs' approach or calculations.

4

the statutory amount in lieu of profits and damages. 15 U.S.C. § 1117(c). Moreover, in this case, the statutory limit would be $2,000,000 because of defendants' willful infringement. 15 U.S.C. § 1117(c)(2).

Otherwise, defendants' arguments against an award of trebled profits rehash issues decided on summary judgment. Defendants repeatedly stress that plaintiffs' damages should be $0 or minimal because, they claim, no violation occurred. That ship has sailed. *See* Order on Summ. J., ECF No. 54; Mem. on Summ. J., ECF No. 58.

The Court also grants plaintiffs' request for attorney fees. 15 U.S.C. 1117(a) provides that a court "may" award reasonable attorney fees to the prevailing party "in exceptional cases." "'Exceptional circumstances' include willful infringement." *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995). "The finding of willfulness determines the right to attorneys' fees." *Id*. The Court found that defendants were willful infringers and so awards plaintiffs attorney fees. *See* Mem. on Summ. J. at 5, 9, ECF No. 58.

As required by the Second Circuit, plaintiffs have submitted time records detailing "for each attorney, the date, hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); Decl. of Rory J. Radding Ex. 2, ECF No. 62. The Court applies the "lodestar method" of calculating reasonable attorney fees. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010). The lodestar amount is "the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate." *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The reasonable hourly rate depends on the rates of similarly skilled attorneys in the judicial district. *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 232 (2d Cir. 1987). However, the district court can take other considerations into account, including "the important factor of 'results obtained,'" in order "to adjust the fee upward or downward." *Healey*, 485 F.3d at 71 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

The Court accepts most of plaintiffs' requested fees as reasonable. The hourly rates billed by the attorneys are comparable to rates that previously have been deemed reasonable in this district. *See, e.g.*, *Union of Orthodox Jewish Congregations of America v. Royal Food Distributors Ltd. Liability Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009); *Diplomatic Man, Inc. v. Brown*, No. 1:05-cv-09069-JSR, 2007 WL 2827125, at *2 (S.D.N.Y. Sept 28., 2009). However, the hourly rate for paralegals working on the matter was $215. Decl. of Rory J. Radding at 6, ECF No. 62. The hourly rates for the associates who "handled virtually every aspect of this case" range from $250 to $310. *Id.* at 5-6. Especially when compared to the associate's rates, the paralegal rates are unreasonably high. Plaintiffs are directed to provide the Court, by no later than September 15, 2015, with a letter calculating what their request for attorney fees would be using an hourly paralegal rate of $100.

Defendants argue that plaintiffs' counsel spent too much time on the case and unnecessarily hired an expert witness on the issue of secondary meaning. Def. Mem. in Opp. at 21, ECF No. 64. Plaintiffs respond that the expert was necessary in light of defendants' counterclaims and defenses and that plaintiffs investigated and deposed two experts that defendants identified but did not use. P. Reply Mem. at 7, ECF No. 73. The Court accepts plaintiffs arguments, and also takes into account the results their work obtained, to conclude that plaintiffs' counsel's hours are reasonable.

The Court also grants plaintiffs' request for costs. Under 15 U.S.C. § 1117(a), prevailing plaintiffs in a trademark action are entitled to "the costs of the action." Defendants have not objected to an award of costs. In ordinary fashion, plaintiffs are directed to submit a bill of costs to the Clerk of the Court.

The Court also grants plaintiffs' request for injunctive relief. 15 U.S.C. § 1116 provides for injunctive relief for trademark violations. "[A] plaintiff seeking a permanent injunction . . . must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs

7

have suffered an irreparable injury: the Court found a likelihood of consumer confusion and further found that plaintiffs' reputation would be harmed by the continued sale of defendants' knives because they are of inferior quality. Mem. on Summ. J. at 16, ECF No. 58; see *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985). Second, remedies at law cannot adequately compensate plaintiffs because of the difficulty in quantifying loss of reputation and goodwill. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011). Third, the balance of hardships is in plaintiffs' favor: they have made substantial investments in promoting the marks while the knives account for little of defendants' sales. Mem. on Summ. J. at 12, ECF No. 58; P. Mem. at 19, ECF No. 61. Finally, trademark law exists, in part, to prevent frauds upon the public; the public interest will be served by an injunction that ends the likelihood of consumer confusion. Mem. on Summ. J. at 16, ECF No. 58.

Defendants do not contest that an injunction should issue. Instead, they argue against some of the terms of plaintiffs' proposed injunction. Def. Mem. in Opp. at 22-24, ECF No. 64. Specifically, they object to the requested recall of the counterfeit knives and the request that defendants mail copies of the judgment and injunction to "any and all of [defendants'] suppliers, distributors, customers, and others from or to whom sales or offers for sales of goods bearing Plaintiff's Marks have been made." P.

8

Mem. Ex. A ¶ J, ECF No. 61. While it is true that injunctive relief must be "narrowly tailored to fit specific legal violations," the provisions to which defendants object satisfy this standard. *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011) (quoting *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003)). A recall and notification of third parties are necessary to accomplish the injunction's purpose: ending the likelihood of consumer confusion and loss of goodwill that have irreparably injured plaintiffs and for which monetary relief cannot adequately compensate. Moreover, plaintiffs' proposed injunction, which the Court adopts, is not as rigid as defendants characterize it. In the same paragraph to which defendants object, the injunction provides that "[a]lternatively, Defendants may notify said suppliers, distributors, customers and others of entry of this Final Judgment and Permanent Injunction in a manner satisfactory to the parties, or in the even disagreement among the parties, in a manner satisfactory to the Court." P. Mem. Ex. A ¶ J, ECF No. 61.

The Court also grants plaintiffs' request to dismiss all remaining claims, counterclaims, and affirmative defenses. With respect to plaintiffs' remaining claims, the Court grants plaintiffs' request pursuant to Fed. R. Civ. Pro. 41(a)(2). With respect to defendants' remaining counterclaims and affirmative defenses, the Court treats plaintiffs' present motion as a motion for summary judgment under Rule 56. The Court considers defendants' remaining counterclaims and affirmative defenses resolved by the

9

findings in its earlier summary judgment decision, *see* Order on Summ. J., ECF No. 54; Mem. on Summ. J., ECF No. 58, except possibly defendants' Second Counterclaim and Third Affirmative Defense of functionality. To the extent functionality was not addressed in the Court's prior decision, the Court now holds that defendants have failed to raise any "genuine issues of material fact" that plaintiffs' trademark or trade dress are functional. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). Defendants do not raise their Second Counterclaim or Third Affirmative Defense in their papers. Indeed, defendants barely mention functionality, *see* Def. Mem. in Opp. at 6, 18, ECF No. 64, and have submitted no admissible evidence to support a claim of functionality. Accordingly, all of defendants' remaining counterclaims and affirmative defenses are dismissed.

For the foregoing reasons, plaintiffs' motions are granted in their entirety, except that plaintiffs are directed to submit an updated calculation of attorney fees to the Court and a bill of costs to the Clerk of the Court. Upon receipt of that calculation, the Court will enter a final judgment that will specific the damages and injunctive relief.

SO ORDERED.

Dated: New York, NY
September 6, 2014

JED S. RAKOFF, U.S.D.J.